THOMAS COOMBE'S EXECUTOR, complainant and appellant,

*v.*

THOMAS CARTHEW, defendant and respondent.

[Filed June 19th, 1899.]

Upon the facts shown in this case—*Held*, that the grantor in the deed referred to was competent to make it on the date of its execution, and that it was not the product of undue influence on the part of the grantee.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following conclusions :

This bill is filed to vacate a deed made on October 5th, 1897, by the complainant to the defendant.

On October 5th, 1897, Thomas Coombe was the owner of a foundry and its machinery, and certain lots of land in the city of Lambertville. On that day he made a deed to Thomas Carthew for the same, reserving to himself a life interest therein. The named consideration in the deed are services, board, care and $500. The property is subject to a mortgage for $1,200.

The value of the property unencumbered is from $4,000 to $6,000 for the real estate, and about $1,000 for the machinery. The contention on the part of the complainant is that the conveyance was practically voluntary, and that the grantor was incompetent to execute it, or, if competent, was improperly influenced to do so by Carthew.

The grantee was a nephew of the grantor. They are both Englishmen by birth. Thomas Coombe, after establishing a foundry business in Lambertville, was accustomed to visit England from time to time, making his home with his relatives while there. Some time, over two years ago, he brought his nephew, who was a patternmaker, with a part of his family, from England to Lambertville, and employed him in his foundry. Soon after the arrival of Thomas Carthew, and the arrival of

the rest of his family, in Lambertville, Carthew began house-keeping in one of two houses in which Thomas Coombe had a life interest. The uncle boarded with Carthew, but neither rent for the house nor board for the uncle was charged.

At this time Fred Coombe, a brother of Thomas Coombe, was employed in the foundry. Thomas Coombe had given to Fred Coombe a one-quarter interest in two of the lots in which the foundry stood.

In September, 1895, Fred Coombe and Thomas Carthew took charge of the works as partners.

On April 30th, 1897, Thomas Coombe filed a bill for partition of this property, which suit was afterwards settled by Thomas Coombe, who bought Fred's interest for about $1,050, $500 of which were loaned to Thomas Coombe by Carthew. This settlement occurred in September, 1897. Shortly afterwards, namely, October 5th, 1897, Thomas Coombe and Thomas Carthew visited Senator Large, who had carried through the partition proceedings, at his office in Flemington, and consulted him about putting the property in a shape so that there could be no trouble about it afterwards. Thomas Coombe had made a will, which was in Mr. Albert D. Anderson's office, a lawyer at Lambertville, but on account of a difficulty with his brother Fred, he wanted the property fixed so that there would be no future trouble. Mr. Large advised a deed to Carthew, drawn so that Thomas Coombe could keep control of the property during his life. A deed was drawn, sent to Carthew for Mr. Coombe, and, after its perusal by Coombe, it was sent back to Senator Large, another draft made, which was finally executed at the railroad station, at Lambertville, on October 5th. It is this deed which is now attacked.

In my judgment, Thomas Coombe was entirely competent to make the deed on October 5th. No doubt he had been, for some time previous to October 5th, a heavy drinker, and occasionally drunk, but the testimony does not convince me that, except on occasions, he was in a mental condition that unfitted him for the transaction of business affairs. He was so sober on October 5th that no signs of intoxication were observable by

Senator Large, Mr. John Massey and others. And previous to that time, during the interviews concerning the execution of the deed with Senator Large, he had exhibited no conditions of inebriety or of a disturbed or feeble mental condition. He was a man of naturally strong head, upon whom liquor probably made little impression. So far as concerns his competency to execute the deed, I have no doubt whatever; nor have I a doubt that he thoroughly understood its import at the time he signed it. Upon the first ground there is nothing to invalidate the deed.

The second ground is that the grantor was unduly influenced by Carthew to make the deed. The deed was not entirely voluntary, as Mr. Coombe had received at least $500; nor did the deed strip the grantor of his interest in the property during his life. It is, of course, obvious that it was in a large degree a gift. He had, however, the right to make it if he was not unduly influenced to do so. Aside from Thomas Coombe's own testimony and apart from the testimony of John E. Massey and John McNulty, in respect to certain admissions made to them by Carthew, there is no evidence of solicitation on the part of Carthew. These admissions are denied by Carthew, but I have no doubt that he wished to have the deed and perhaps spoke to Thomas Coombe about it. I do not think, however, that Coombe was a man to be influenced by any dictation as to what he should do with his property. But there are other facts abundantly proved in the case which display a motive for making the deed to Carthew, apart from an illegal influence exerted over him by Carthew.

This nephew had been a favorite of his uncle for many years. Ten years before—long anterior to any suspicion of Thomas Coombe possessing any habits of inebriety—he had made a will in Carthew's favor. I have no doubt that he had, time and time again, as Carthew says, told him that he had done this. The deed executed on October 5th accomplishes what this will would have accomplished upon the death of Thomas Coombe. The reason for changing the will to a deed, having the same force, undoubtedly grew out of the differences of Thomas with his brother, Fred. As already remarked, he had given Fred a

Coombe's Executor *v.* Carthew.

one-quarter interest in the foundry property, and he was dissatisfied with Fred's conduct. He said to his barber that he had brought Carthew over to protect him from Fred. Afterwards the partition proceedings were commenced to shut Fred out from the property. He also thought that Fred's boys set fire to the foundry premises. After Carthew came Thomas Coombe and Fred and his boys had a fracas, in which the old man was struck. When he first employed Mr. Large to get Fred's interest in the property he expressed himself very strongly against Fred and his boys. On the heels of the settlement of this partition matter he visited Mr. Large about fixing the property so that it would be secure. The deed was prepared and signed, as already stated, and on the day it was executed it was fully explained to him by Senator Large, who told him that when it went upon record he could not change it. The power of attorney which accompanied it was also read.

Some days after the deed was signed Thomas Coombe went on a debauch, which ended in an attack of sickness. He then had a quarrel with his nephew, and afterwards this suit was brought.

It seems to me that the long-existing intention to leave this property to Carthew, together with his expressed desire to put it in a shape free from trouble from any attack of Fred, supplies sufficient motives for the execution of the deed.

Nor do I think the insistence that Carthew had inspired Coombe with a dislike of Fred, and had fostered the partition suit so as to create the motive for making the deed, is proved. Undoubtedly there was bad feeling between Fred and Carthew, but I do not find in the case that Carthew, by any false accusation against Fred, embittered his uncle's mind against him in a way that led to, and was intended to lead to, the execution of this deed.

I am constrained to the conclusion that the bill must be dismissed.

*Mr. Garret D. W. Vroom, Mr. Walter F. Hayhurst* and *Mr. Charles A. Skillman,* for the appellant.

*Mr. H. Burdett Herr* and *Mr. George H. Large,* for the respondent.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, LIPPINCOTT, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—13.

*For reversal*—None.